**Frances ULRICH, Appellant,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY,**
**Appellee.**

**No. 89–5429SD.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1990.

Decided Aug. 29, 1990.

Gregory A. Eiesland, Rapid City, S.D., for appellant.

G. Verne Goodsell, Rapid City, S.D., for appellee.

Before MAGILL and BEAM, Circuit Judges, and LARSON,[*] Senior District Judge.

MAGILL, Circuit Judge.

Frances Ulrich appeals the district court's [1] order granting summary judgment to St. Paul Fire & Marine Insurance Company (St. Paul) on Ulrich's bad faith claim. The district court found that no genuine issue of material fact existed as a matter of law concerning whether St. Paul had a reasonable basis for denying Ulrich's claim for vocational rehabilitation benefits pursu-

---

[*] The Honorable Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

ant to S.D.C.L. § 62–4–5.1 (1978). We affirm.

## I.

Ulrich suffered a prolapsed lumbar disc with lumbosacral sprain on July 4, 1984, while working as a Licensed Practical Nurse (LPN) at Community Memorial Hospital (Community) in Sturgis, South Dakota. Ulrich was hospitalized from July 5 through July 13 by Dr. Liedtke, an osteopath and Ulrich's treating physician. St. Paul was notified of the injury on July 11.

Dr. Liedtke referred Ulrich to Dr. James, a neurosurgeon. Dr. James reviewed the results of a myelogram and CT scan and concluded that the injury was not severe enough to warrant surgery. Dr. Lindenbaum, an orthopedic surgeon, examined Ulrich for St. Paul and found that a CT scan, myelogram, bone scan and neurological work-up proved normal, but she was overweight, which caused stress to her back. Dr. Lindenbaum advised Ulrich that she could go back to work as an LPN at Community.

By October 19, 1984, Ulrich was doing all her own housework, using the stairs, doing her own laundry, and working an eight-hour day. By January 1, 1985, Ulrich was working full-time under a twenty-pound weight limitation and could push and pull a wheelchair without aggravating her pain. On January 25, 1985, Dr. Liedtke told Ulrich she could continue working pending reevaluation by another doctor on January 29. Dr. Pucelik, an orthopedic surgeon, examined Ulrich for Dr. Liedtke and concurred that nothing was wrong and Ulrich could work under the twenty-pound restriction. However, on February 8, 1985, Ulrich terminated her employment at Community by mutual agreement.

On March 15, 1985, Dr. Lindenbaum, at the request of Dr. Liedtke, opined that Ulrich had attained maximum medical recovery and rated her with a nine percent permanent partial disability (PPD) rating and informed St. Paul that Ulrich's LPN training could enable her to find other employment within the nursing field that did not involve overhead work or repeated heavy lifting. A PPD agreement was approved on May 10, 1985. PPD payments were made until October 7, 1985. St. Paul believed that Ulrich was completely cured and looking for work because on October 30 a claims adjuster had been told this by the director at Community who had had an inquiry from Ulrich.

In March 1986, St. Paul requested an update on Ulrich's condition from Dr. Liedtke but received no response. On June 25, 1986, Ulrich's attorney wrote to St. Paul requesting rehabilitation benefits. St. Paul denied coverage on July 17, 1986 on the ground that benefits under S.D.C.L. § 62–4–5.1 were intended for persons unable to return to their usual and customary line of employment and the evidence indicated that medically Ulrich could do so. St. Paul contended that Ulrich had failed to find a job in her usual and customary line of employment.

On August 1, 1986, Dr. Liedtke informed St. Paul that Ulrich was not physically able to work as a nurse and rehabilitation was required. On December 19, 1986, St. Paul scheduled an independent medical exam for Ulrich with Dr. Berkebile, an orthopedic surgeon. Dr. Berkebile examined Ulrich on January 16, 1987 and found that Ulrich was overweight, suffered from back strain but had sustained no neurological damage, and concluded that Ulrich (1) probably could go back to some type of nursing; (2) probably should not be allowed to do patient transfer or patient lifting; and (3) might be able to handle the secretarial work for which she was being retrained because it would cause less back strain. In February 1987, St. Paul hired Midwest Rehabilitation to conduct a vocational survey of various existing employment opportunities within the LPN field, considering Ulrich's disabilities and weight restriction.

On July 1, 1987, Ulrich filed a petition requesting a hearing with the Department of Labor (DOL) claiming an entitlement to rehabilitation benefits under S.D.C.L. § 62–4–5.1. On July 5, DOL found that Ulrich was entitled to rehabilitation benefits. On August 29, 1988, satisfaction of

judgment was executed and St. Paul paid Ulrich $5,232.

On September 13, 1988, Ulrich filed this diversity action alleging bad faith handling of the rehabilitation benefits claim and seeking actual and punitive damages. On July 3, 1989, St. Paul moved for summary judgment under Fed.R.Civ.P. 56(b). Ulrich responded on July 17, 1989. On August 10, 1989, the district court filed a memorandum opinion and order granting St. Paul's motion because Ulrich had failed to raise a genuine issue of material fact regarding St. Paul's reasonable basis for denying Ulrich's claim. 718 F.Supp. 759. Ulrich appealed.

## II.

■ We have held that South Dakota worker's compensation law implicitly recognizes a cause of action in tort arising out of bad faith failure of an insurance company to pay a valid claim. *Simkins v. Great West Casualty Co.*, 831 F.2d 792, 793 (8th Cir.1987). The South Dakota Supreme Court has come to the same conclusion. *In re Certification of a Question of Law (Champion v. U.S. Fidelity & Guaranty Co.)*, 399 N.W.2d 320, 323 (S.D.1987). In order to prevail in a bad faith action, a plaintiff must demonstrate " 'an absence of a reasonable basis for denial of policy benefits *and* the knowledge or reckless disregard of a lack of a reasonable basis for denial.' " *Champion*, 399 N.W.2d at 324 (quoting *Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo.1985) (emphasis added)). Therefore, an insurer will be held liable only when a claim is intentionally denied without a reasonable basis. *Id.*

■ The issue for our determination is whether the district court erred in granting summary judgment in favor of St. Paul. We must apply the same strict standard as the district court. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir.1989).

Summary judgment is properly granted "only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir.1987). "We are required to view all evidence in the light most favorable to the nonmoving party and to 'give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings.' " *Robinson*, 864 F.2d at 624 (quoting *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1225 (8th Cir.1983)). Summary judgment is properly granted against a party who fails to make a showing sufficient to establish that there is a genuine issue as to any triable fact, essential to the party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). We hold that the district court properly granted summary judgment because there is no genuine issue of material fact concerning St. Paul's reasonable basis for denying Ulrich's claim, an essential element of a bad faith action.

Ulrich sought actual damages for the period from the time of her injury to the time rehabilitation benefit payments commenced as well as punitive damages on the ground that St. Paul acted in bad faith in handling Ulrich's claim and denying coverage on July 17, 1986. St. Paul argues that it acted reasonably in denying rehabilitation benefits provided for under S.D.C.L. § 62–4–5.1 because to their knowledge Ulrich was able to return to her usual and customary line of employment, and had been actively looking for employment accordingly, but had been unsuccessful.

St. Paul was first notified in August of 1986 by Dr. Liedtke that Ulrich was not employable in the nursing field and rehabilitation would be required. Thereafter, St. Paul processed Ulrich's claim in as timely a manner as possible. Up until this point, St. Paul had denied benefits to Ulrich based on the medical evidence presented. Such reliance was reasonable. Ulrich did not produce evidence to the contrary, in response to St. Paul's motion for summary judgment, sufficient to raise a genuine issue of material fact concerning St. Paul's reasonable basis. Since St. Paul had a reasonable basis for denying Ulrich's claim, St. Paul was entitled to judgment as a matter of law.

For the foregoing reasons, summary judgment was properly granted. We affirm.