RIO SUITE HOTEL & CASINO, Appellant, *v.*
STUART GORSKY, Respondent.

No. 27178

May 22, 1997

939 P.2d 1043

*Morris, Brignone & Pickering,* and *Mark A. Hutchinson,* Las Vegas, for Appellant.

*Greenman, Goldberg, Raby & Martinez,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

On January 4, 1994, Stuart Gorsky ("Gorsky") was employed and working at Rio Suite Hotel & Casino ("Rio"). While walking in the casino on his way to clock out from his duties as a poker dealer, Gorsky fell in the hallway and sustained injuries to his knees and back. On January 7, 1994, Gorsky submitted an employee's claim for worker's compensation and an accident report regarding the incident.

On February 7, 1994, the claims administrator for Rio denied Gorsky's claim because he failed to demonstrate that the injuries "arose out of and/or in the course of his employment." Gorsky appealed that decision to the State of Nevada Department of Administration hearing officer. On April 15, 1994, the hearing officer reversed the decision of Rio's claims administrator. Rio appealed the hearing officer's decision to the administrative appeals officer. On August 1, 1994, the hearing was held.

Danny Stefanovic ("Stefanovic"), Gorsky's co-worker at Rio, was identified by Gorsky as a witness to the incident. Stefanovic testified that there was no external force or obstacle in the hallway where Gorsky fell. Stefanovic also testified to Gorsky's admission that multiple sclerosis (MS) caused his fall. Another fellow employee, Sue Lindhout ("Lindhout"), testified that she had seen Gorsky fall in the poker room on a previous occasion for no apparent reason.

Gorsky testified that he could not recall if any substance was present on the floor which could have caused him to slip and fall. Gorsky admitted that his description of the slip and fall in the incident report did not mention any obstacle or foreign substance on the carpet which caused him to fall. Finally, Gorsky admitted

telling doctors that although he could not specifically remember his condition at the time of the fall, he had been experiencing difficulty walking.

The appeals officer also considered the medical reports of two examining physicians, R. Kirby Reed ("Dr. Reed") and David Toeller ("Dr. Toeller"). Dr. Reed, having treated Gorsky previously for MS, noted that for nine months prior to falling on January 4, 1994, Gorsky used a walking cane. Dr. Reed also found that Gorsky exhibited "a wide-based unsteady gait, and it almost appeared that if he did not have a cane for stability and balance, he would probably fall." In concluding his examination report, Dr. Reed wrote: "Given the fact that the patient cannot remember any specific obstacle over which he may have stumbled, nor does he have any adequate explanation for why he fell, I feel that the predominant reason that he fell is because of his demyelinating disease [MS]."

Dr. Toeller, asked to perform an independent examination of Gorsky, echoed the same conclusion of Dr. Reed. Dr. Toeller noted:

> *The slip/fall of 01/04/94 in my opinion and according to the opinion of neurologist Dr. Reed, is a direct consequence of the patient's multiple sclerosis.* Multiple sclerosis is a demyelinating disease that effects [sic] the central nervous system primarily. It can affect the preferial neurological system as well. *Poor coordination is one of the more common physiologic occurrences in a patient with such a demyelinating disease.* Weakness of the extremities, particularly the lower extremities, is the prevalent finding. *Incoordination or loss of position sense may occur independently with weakness and often leads to gait impairment and clumsy movement of the extremities.*

(Emphasis added.)

Based on this evidence, the appeals officer made the following findings of fact:

> 1. Neither Mr. Gorsky nor any of the other witnesses could identify any matter which caused this fall and there is no evidence of any external force or matter causing Mr. Gorsky to slip and fall. . . .
> 2. Substantial evidence in the record shows that Mr. Gorsky fell as a result of his preexisting nonindustrial medical condition.
> . . . .
> 4. The preponderance of the evidence establishes that the injury did not arise out of the employment but instead arose out of risks and conditions personal to the claimant.

The appeals officer concluded that Gorsky did not satisfy the requirements of NRS 616.5015(1) which states: "An injured employee or his dependents are not entitled to receive compensation pursuant to the provisions of this chapter unless the employee or his dependents establish by a preponderance of the evidence that *the employee's injury arose out of and in the course of his employment*." (Emphasis added.)[1] Specifically, the appeals officer noted that Gorsky failed to establish, by a preponderance of the evidence, that his injuries "arose out of" his employment. Therefore, Gorsky's injuries were not compensable under a worker's compensation claim.

On April 19, 1995, the district court reversed the decision of the appeals officer. In reversing, the district court found:

> [T]he Appeals Officer erred as a matter of law when she denied GORSKY'S claim because his injury 'arose out of risks and conditions personal to the claimant.' This conclusion by the Appeals Officer is unsupported by any legal authority, it is not drawn from the language of the NRS 616.5015, and it is not supported by any case law.

The district court went on to note that Gorsky's injuries were compensable because they were caused by an "accident" as that term is defined by NRS 616.020.[2] With regard to the appeals officer's finding that MS caused Gorsky's fall, the district court summarily stated, "The fact that Gorsky had [MS] and it may have been the cause of the fall, [sic] does not affect his claim under the requirements of NRS 616.5015 and NRS 616.020." The lower court did not cite any authority for this proposition.

Rio now appeals the district court's decision, contending that Gorsky's injuries did not arise out of his employment.

In reviewing administrative decisions, the primary function of this court is to determine whether the agency's decision was arbitrary or capricious and, thus, an abuse of discretion. NRS 233B.135(3); United Exposition Service Co. v. SIIS, 109 Nev. 421, 423, 851 P.2d 423, 424 (1993). Reviewing courts are limited to the administrative record below in making their findings. State Emp. Sec. Dep't v. Weber, 100 Nev. 121, 124, 676 P.2d 1318, 1320 (1984). The gravamen "is whether the [agency's] decision was based on substantial evidence." McCracken v. Fancy, 98 Nev. 30, 31, 639 P.2d 552, 553 (1982). Substantial

---

[1] In 1993, NRS 616.5015(1) was replaced by NRS 616C.150.

[2] NRS 616.020 states: "Accident" means an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury."

evidence is that evidence "which a reasonable mind might accept as adequate to support a conclusion." Schepcoff v. SIIS, 109 Nev. 322, 325, 849 P.2d 271, 273 (1993).

Rio claims that Gorsky never satisfied the preponderance of the evidence standard in NRS 616.5014. Specifically, Rio alleges that Gorsky failed to prove that his injuries arose out of his employment as a poker dealer.

Before examining the administrative record to determine if substantial evidence exists to sustain Gorsky's position, we must first define the decisive phrase in this controversy, "arose out of," which is contained in NRS 616.5015(1). If substantial evidence exists that demonstrates Gorsky's knee and back injuries arose out of his employment, he is entitled to recovery of worker's compensation benefits. Conversely, if this threshold finding is not met, Gorsky himself must provide alternative means for his health care.

The parties do not provide any citations interpreting the phrase, "arose out of," found in NRS 616.5015(1). Indeed, a search of Nevada's case law reveals that this court has never addressed this issue in the context of NRS 616.5015(1). However, numerous other jurisdictions have developed settled law which we look to for enlightenment.

An accident or injury is said to arise out of employment when there is a causal connection between the injury and the employee's work. Murphy v. Industrial Comm'n of Ariz., 774 P.2d 221, 224 (Ariz. 1989). In other words, the injured party must establish a link between the workplace conditions and how those conditions caused the injury. County of Chesterfield v. Johnson, 376 S.E.2d 73, 75 (Va. 1989). Further, a claimant must demonstrate that the origin of the injury is related to some risk involved within the scope of employment. Smith v. Albuquerque, 729 P.2d 1379, 1383 (N.M. Ct. App. 1986). However, if an accident is not fairly traceable to the nature of employment or the workplace environment, then the injury cannot be said to arise out of the claimant's employment. O'Laughlin v. Circle A Constr., 739 P.2d 347, 350 (Idaho 1987). Finally, resolving whether an injury arose out of employment is examined by a totality of the circumstances. Triad Painting Co. v. Blair, 812 P.2d 638, 643 (Colo. 1991).

Here, Gorsky failed to present any evidence that his slip and fall arose out of his duties as a poker dealer. Additionally, Gorsky did not provide any testimony or evidence which demonstrated that his work environment caused him to fall. In fact, all the

evidence presented at the hearing suggested that Gorsky fell as a result of his preexisting condition, MS.

Drs. Reed and Toeller both concluded that Gorsky fell from his MS; Stefanovic, an eyewitness, testified that there was no external force or obstacle on the hallway floor which caused Gorsky to fall, and Gorsky admitted to Stefanovic that he fell from his MS; Gorsky himself testified that he could not remember how he fell, and admitted to prior momentary bouts of disequilibrium; and Gorsky was seen by Lindhout falling in the poker room on at least one previous occasion without any precipitating event. Therefore, we conclude that the appeals officer correctly held that Gorsky failed to meet the statutory burden of proof imposed upon him as a claimant under NRS 616.5015(1).

Gorsky argues that the failure of the appeals officer to cite any authority for her decision and her misapplication of NRS 616.5015(1) demonstrate reversible error. Gorsky further claims that the Nevada Industrial Insurance Act "provides for a 'no-fault' remedy for workers injured at work." These assertions lack merit.

The appeals officer based her decision on NRS 616.5015(1) and cited it accordingly. The fact that the appeals officer did not track the exact language of the statute is of no moment. The record indicates that the appeals officer made a thorough inquiry into the causes of Gorsky's injuries and determined that they arose out of something other than his employment. This is precisely what NRS 616.5015(1) requires.

Additionally, the Nevada Industrial Insurance Act is not a mechanism which makes employers absolutely liable for injuries suffered by employees who are "on the job." The language of NRS 616.5015(1) belies this assertion. The requirements of "arising out of and in the course of employment" make clear that a claimant must establish more than merely being at work and suffering an injury in order to recover. Therefore, substantial evidence in the record does not exist to support, by a preponderance of the evidence, that Gorsky's injuries arose out of his employment.

Thus, the district court should have deferred to the substantial evidence in the record supporting the appeals officer's ruling in the matter. See NRS 233B.135(3)(e).

Accordingly, we reverse the order of the district court and reinstate the decision of the appeals officer.